UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
KATHLEEN ABISSO,                                    Chapter 13
           DEBTOR.                                    Case No. 12-17888-WCH

_____

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

      The matter before me is the "Trustee's Objection to Confirmation of Debtor's Chapter 13 Plan" (the "Objection") filed by Carolyn Bankowski, the Chapter 13 trustee (the "Trustee"), and the "Debtor's Response to Trustee's Objection to Confirmation" (the "Response") filed by Kathleen Abisso (the "Debtor"). The Trustee asserts that the Debtor is not entitled to claim a marital adjustment with respect to her non-debtor spouse's income for purposes of determining whether the applicable commitment period is three or five years. For the reasons set forth below, I will overrule the Objection.

**II. BACKGROUND**

      The Debtor filed a Chapter 13 petition on September 28, 2012, along with the Chapter 13 Statement of Current Monthly and Disposable Income (the "B22C Form") and the Chapter 13 plan (the "Plan"). Although the Debtor is married, her husband did not join her in filing the bankruptcy petition. On the B22C Form, the Debtor marked the box indicating "the applicable commitment period is 3 years." On Line 2, the Debtor listed $1,668.78 in Column A labeled "Debtor's Income," and $7,685.56 in Column B labeled "Spouse's Income." The Debtor listed no additional income on Lines 2-9. On Line 11, the Debtor listed her total gross income as $9,354.34, the sum of Columns A and B above. On Lines 13 and 19, the Debtor listed $3,574.06

as a marital adjustment, the sum of her spouse's domestic support obligation, payroll taxes, and other payroll deductions. On Line 14, the Debtor listed her current monthly income as $5,780.28—her gross income minus the marital adjustment. On Line 15, the Debtor listed her annualized current monthly income for 11 U.S.C. § 1325(b)(4) as $69,363.36. The Debtor then checked the box on Line 17 indicating that the amount on Line 15 was less than the applicable median family income, which prompted her to check the box for "the applicable commitment period is 3 years" at the top of the B22C Form.[1]

The Debtor's Chapter 13 Plan proposes payments of $120.00 per month for 48 months, asserting that "[a] 48 month plan is necessary in order to [sic] the plan to be feasible."[2] The Plan lists total unsecured claims in the amount of $53,354.42. The plan reflects that unsecured creditors are to receive a dividend of not less than a third of one percent of their claims, proposing a total payment of $184.00 to unsecured creditors.

On November 5, 2012, the Trustee filed the Objection and on November 16, 2012, the Debtor filed the Response. On February 14, 2013, I conducted a hearing on the Objection. Both parties participated in oral argument, and at the conclusion of the hearing, I took the matter under advisement.

### III. POSITIONS OF THE PARTIES

   A. The Trustee

The Trustee objects to the Debtor taking a marital adjustment on Line 13 of the B22C Form, rendering her income below median, and allowing her to have a shorter plan term.[3] The

---

[1] Docket No. 5.

[2] Docket No. 2.

[3] Objection ¶ 6.

Trustee argues that the Debtor's annualized current monthly income would render her above median but for the marital adjustment.[4] She contends that in determining the applicable commitment period for a Chapter 13 plan, the Bankruptcy Code requires the calculation include the current monthly income of the Debtor and the Debtor's spouse combined, and as such, the Debtor cannot use the marital adjustment to reduce the commitment period from 60 to 36 months.[5]

> During the hearing, the Trustee further explained that:
>
> [Under 11 U.S.C. § 1325(b)(4)(A)(ii),] when you're determining the applicable commitment period in connection with the debtor's Chapter 13 case you're supposed to utilize the current monthly income of the debtor and the debtor's spouse combined and if that's more than the median family income of a household of a similar size, then the debtor is an above-median income debtor. The debtor is asserting a marital deduction and they are seeking to deduct out certain obligations of the non-debtor spouse from the current monthly income.
>
> Now we have no objection that those are separate debts that the spouse is able to deduct, but we disagree that the debtor is able to deduct those to make the debtor a below-median income debtor.[6]

The Trustee asserted that the Bankruptcy Code "clearly acknowledges that the [Debtor's] spouse can be a nondebtor, but it's saying that you're supposed to include the current monthly income of that person."[7] With respect to permitting a marital adjustment in the calculation of the applicable commitment period, the Trustee argued:

> I do agree that the [Official 22C Form is] wrong in allowing it. I think it's only allowable – there's two spots they allow a marital deduction. One is in Line 13 and one is in Line 19. I do believe it's proper to take the marital deduction under Line 19 when you're determining projected disposable income on line 59, but not

---

[4] *See id.* ¶¶ 4, 6.

[5] *Id.* ¶ 6.

[6] Trans. Feb. 14, 2013 at 3:4-16.

[7] *Id.* at 4:4-7.

3

for determining whether or not a debtor is above or below median based upon a reading of the language of the statute.[8]

The Trustee conceded that while there have been many decisions on this issue, there is only one case supporting her position.[9] She purports, however, that the minority view finds support in legislative history and the Advisory Committee Notes.[10] Reading the statute together with "*Lanning* and *Ransom*," the Trustee maintains that "the minority view has correctly decided the issue."[11]

    B.  <u>The Debtor</u>

The Debtor focuses her argument on the meaning of the phrase "current monthly income of the debtor and the debtor's spouse combined," found in 11 U.S.C. § 1325(b)(4)(A), which is used to determine the duration of a debtor's Chapter 13 plan.[12] She contends that under a plain meaning interpretation of the statute, "current monthly income" modifies both "the debtor" and "the debtor's spouse."[13] The Debtor argues that where 11 U.S.C. § 101(10A) only defines "current monthly income" with respect to the debtor, it follows that a non-filing spouse has no current monthly income.[14] The Debtor explains how she calculated the applicable commitment period to be three years by adding her current monthly income ($5,780.28.28) plus her spouse's

---

[8] *Id.* at 4:9-16.

[9] *Id.* at 9:16-18 (citing *In re Ariyaserbsiri*, No. 07-41348, 2008 WL 5191200 (Bankr. E.D. Tex. Sept. 17, 2008)).

[10] *See id.* at 5:7-10.

[11] *Id.* at 5:14-19; *see Ransom v. FIA Card Servs.*, 131 S. Ct. 716, 178 L. Ed. 2d 603 (2011); *Hamilton v. Lanning*, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010).

[12] Response at 1.

[13] *Id.* at 2.

[14] *Id.* at 2-3 (citing *In re Clemons*, No. 08-82968, 2009 WL 1733867, at *2 (Bankr. C.D. Ill. June 16, 2009); *In re Grubbs*, No. 07-322822-KRH, 2007 WL 4418146 (Bankr. E.D. Va. Dec. 14, 2007)).

current monthly income ($0), which when annualized is less than the median income for a household of her size.[15]

The Debtor contends that if the phrase "current monthly income" did not modify the "debtor's spouse," absurd results would ensue.[16] The Debtor explains that reading the statute to require the calculation of "the current monthly income of the debtor" plus "the gross income of the debtor's spouse" would result in double counting the portion of income that a debtor's spouse contributes to the debtor or their dependents, placing married debtors who file individually in a worse situation than if they were to file jointly.[17] The Debtor believes that the Trustee interprets 11 U.S.C. § 1325(b)(4)(A) to require "the current monthly income of the debtor" plus "all other income of the debtor's spouse that is not already included in the current monthly income of the debtor."[18] The Debtor argues that the Trustee's interpretation is inconsistent with the plain meaning of the statute and that it "has been refuted by the vast majority of courts that have considered it."[19] Finally, the Debtor asserts that the Trustee's allegations that the Debtor is not devoting all her disposable income to the Plan and that the Plan is not in the best interest of creditors are wholly unsupported.[20]

## IV. DISCUSSION

Section 1325(b)(4)(A) of the Bankruptcy Code states that the "applicable commitment period" for a Chapter 13 plan shall be:

---

[15] *Id.* at 3.

[16] *Id.*

[17] *Id.* at 4.

[18] *Id.*

[19] *Id.*

[20] *Id.* at 5.

5

> (i) 3 years; or
>
> (ii) not less than 5 years, if the *current monthly income of the debtor and the debtor's spouse combined*, when multiplied by 12, is not less than . . .
>
> \* \* \*
>
> (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals.[21]

The parties' dispute stems from the language "current monthly income of the debtor and the debtor's spouse."[22] Specifically, the parties disagree whether a non-filing spouse's income must be attributed to a debtor to determine her applicable commitment period, despite the fact that a portion of the non-filing spouse's income will not be contributed to the debtor's household expenses and is not considered part of the debtor's disposable income.[23]

Section 101(10A) defines "current monthly income" as the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive)."[24] This includes any contributions made on a regular basis to the debtor's household expenses by a non-filing third party.[25] Arguably, because "current monthly income" is defined only in regards to the "debtor," it follows that a non-filing spouse (i.e., a spouse who is not a joint debtor) does not have any "current monthly income."[26] Thus, it would appear that 11

---

[21] 11 U.S.C. § 1325(b)(4)(A) (emphasis added).

[22] *Id.*

[23] *See In re Dugan*, No. 07-40899-13, 2008 WL 3558217, at *2 (Bankr. D. Kan. Aug. 12, 2008).

[24] 11 U.S.C. § 101(10A)(A).

[25] 11 U.S.C. § 101(10A)(B); *see In re Trimarchi*, 421 B.R. 914, 917-918 (Bankr. N.D. Ill. 2010).

[26] 8 COLLIER ON BANKRUPTCY ¶1325.11[4][d] (Alan R. Resnick & Henry J. Sommer eds., 16th ed.) (*citing In re Clemons*, 2009 WL 1733867, at *2).

U.S.C. §§ 1325(b)(4)(A) and 101(10A) are inconsistent. The mathematical calculation of a debtor's "current monthly income," which occurs within the Official 22C Form,

> remedies this discrepancy by first calling for a separate statement of the "current monthly income" of the non-filing spouse as if a separate bankruptcy had been filed and then providing for a subtraction to the debtor for the amount of income not regularly paid for the household expenses of the debtor and the debtor's dependents. [27]

This deduction is known as the "marital adjustment,"[28] which is factored into both the calculation of the applicable commitment period[29] and the determination of the debtor's disposable income.[30]

On the other hand, the Trustee urges that 11 U.S.C. § 1325(b)(4)(A) explicitly calls for the inclusion of the non-filing spouse's albeit hypothetical "current monthly income," and that the Official 22C Form incorrectly allows for a marital adjustment when calculating the applicable commitment period. Therefore, the Trustee argues that the Debtor's plan term should be 60 months because factoring in her spouse's income, she is above the median income for a family of similar size. The Trustee bases her argument on canons of statutory interpretation, legislative history, Advisory Committee Notes, and a single case that found in her favor.[31]

While the First Circuit has yet to address this issue,

> [t]he overwhelming majority of courts addressing this conundrum have concluded that because a non-filing spouse has no current monthly income as statutorily defined, the same computation which governs the determination of the debtor's

---

[27] *In re Clemons*, 2009 WL 1733867, at *2.

[28] *In re Trimarchi*, 421 B.R. at 918.

[29] *See* Official 22C Form, Line 13.

[30] *See id.*, Line 19.

[31] *See In re Ariyaserbsiri*, 2008 WL 5191200.

7

disposable income for plan payment purposes governs the determination of the applicable plan term.[32]

In *In re Dugan*, the court explained how it reconciled the language of 11 U.S.C. §§ 1325(b)(4)(A) and 101(10A), and how its interpretation supports the underlying policies of the Bankruptcy Code:

> This interpretation of [11 U.S.C.] § 1325(b)(4)(A)(ii) does not make the phrase "and the debtor's spouse" surplusage. The debtor's spouse will have current monthly income, as that term is defined in § 101(10A), when two debtors file a joint case. The phrase "and the debtor's spouse" in [11 U.S.C.] § 1325(b)(4)(A)(ii) thus acknowledges that a debtor's spouse will have current monthly income in a joint case and, in such a case, directs the court to consider the spouse's current monthly income in determining the applicable commitment period. In the case of a married debtor who opts to file individually, the Court also considers the phrase "and the debtor's spouse." The definition of "current monthly income" effectively instructs the Court to add zero as the current monthly income of the nonfiling spouse.
>
> Interpreting [11 U.S.C.] § 1325(b)(4)(A)(ii) in this manner comports with the policies underlying the Bankruptcy Code. The interpretation advanced by the Trustee would subject a married debtor filing individually to greater risk of plan failure. . . . [T]he additional income of a spouse is completely irrelevant if that spouse's income is not made available to cover household expenses so that the debtor has more money available to make the plan payment.
>
> The Court can think of no reason why Congress would require the Court to treat a married debtor, who elects not to file jointly with his spouse, as if the case was filed jointly solely for the purpose of calculating the applicable commitment period, but provide different treatment for all other aspects of the means test. There is no readily apparent basis for requiring a debtor to account for all of his spouse's income when determining whether a Chapter 13 case must run for 36 or 60 months, but then allowing at least a portion of the spouse's income to be totally disregarded when deciding all other issues, such as what the debtor's projected disposable income will be, or whether it is an abuse of the bankruptcy process to allow that debtor to file a Chapter 7 case in the first instance.[33]

---

[32] *In re Clemons*, 2009 WL 1733867, at *2 (*citing In re Stansell*, 395 B.R. 457 (Bankr. D. Idaho 2008); *In re Borders*, No. 07-12450, 2008 WL 1925190 (Bankr. S.D. Ala. Apr. 30, 2008); *In re Dugan*, 2008 WL 3558217; *In re Grubbs*, 2007 WL 4418146; *In re Hall*, No. 06-71296, 2007 WL 445517 (Bankr. C.D. Ill. Feb. 12, 2007); *In re Quarterman*, 342 B.R. 647 (Bankr. M.D. Fla. 2006)).

[33] *In re Dugan*, 2008 WL 3558217, at *3.

I agree with the majority view and the above rationale. Accordingly, I find that the Debtor is entitled to the marital adjustment on Line 13 of the B22C Form to deduct the portion of her non-filing spouse's income that is not contributed on a regular basis to the Debtor's household expenses for the purpose of determining her applicable commitment period.

## V. CONCLUSION

For the aforementioned reasons, I will enter an order overruling the Trustee's Objection.

*[Signature: William C. Hillman]*

_____
William C. Hillman
United States Bankruptcy Judge

Dated: April 17, 2013

Counsel Appearing:

    Patricia A. Remer, Office of the Chapter 13 Trustee, Boston, MA,
        for Carolyn Bankowski, Chapter 13 Trustee
    Christopher M. Brine, Culik Law PC, Woburn, MA,
        for Kathleen Abisso, the Debtor